**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JEDIDIAH BROWN, et al.,

        Plaintiffs,

        v.

TIFFANY HENYARD, et al.,

        Defendants.

No. 25 CV 1514

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jedidiah Brown criticized Tiffany Henyard, then-Supervisor of Thornton Township, during the public comment portion of a regularly scheduled town meeting. Following his comments, a melee ensued where both Brown and plaintiff Lavell Redmond were injured. Plaintiffs bring twelve claims—five under 42 U.S.C. § 1983 and seven under various state tort and property-law theories—against nine defendants. Of the defendants, six move to dismiss certain claims against them under Rule 12(b)(6). For the reasons discussed below, defendants Allpoints Security and Detective, Inc. and Johnathan McKinney's motion to dismiss is denied; defendants Tiffany Henyard, Kamal Woods, and William Moore's motion to dismiss is granted in part, denied in part; and defendant South Holland Police Department's motion to dismiss is granted.

## I.     Legal Standards

Federal Rule of Civil Procedure 12(b)(6) governs dismissals based on failure to state a claim upon which relief may be granted. To survive a 12(b)(6) motion, the

complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). In evaluating a complaint's sufficiency, courts "accept as true all well-pled facts and make any reasonable inferences in the non-movant's favor." *Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 664 (7th Cir. 2022).

## II.   Background

On January 28, 2025, plaintiffs Jedidiah Brown and Lavell Redmond attended a regularly scheduled Thornton Township meeting. [62] ¶ 16.[1] Brown participated in the public comment portion of the meetings and made remarks directed at defendant Tiffany Henyard, who was at that time the Supervisor of Thornton Township. [62] ¶ 17. As he concluded his comments, defendant Kamal Woods—a close associate of Henyard—approached Brown from behind, called him a "bitch," and threatened to hurt him. [62] ¶ 18. Defendant DeMarcus Criggley, another known associate of Henyard and Woods, similarly called Redmond a "bitch" and threatened to hurt him. [62] ¶ 19. Woods then pushed and swung at Redmond, and a melee ensued. [62] ¶¶ 21–22.

During the melee, Henyard physically attacked both Brown and Redmond. [62] ¶ 23. Brown was then confronted by defendant Johnathan McKinney, a security guard hired by defendant Allpoints Security and Detective, Inc. for the Township meeting. [62] ¶¶ 26–27. McKinney picked Brown up and carried him into a separate

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from plaintiffs' consolidated amended complaint, [62].

room, where he physically restrained Brown against his will and hit him several times. [62] ¶¶ 28–30. A second Allpoints security guard was also present in the room and helped wrestle Brown to the ground. [62] ¶¶ 28–29. After about ninety seconds, Brown broke free and ran out of the room. [62] ¶ 31. He left the building and noticed he was missing three lower dental veneers. [62] ¶¶ 35–36.

During this same period of time, Henyard physically attacked Redmond and hit him with her microphone. [62] ¶ 37. While Redmond was searching for Brown, Criggley kicked him several times. [62] ¶¶ 39–40. On his way out from the building, Redmond realized he was missing his cell phone. [62] ¶ 46. Most of the melee was captured on video cameras. [62] ¶ 48.[2] The videos reveal Criggley handing Redmond's phone to defendant William Moore, a Thornton Township employee. [62] ¶ 51.

The next day, Brown filed and was granted an emergency restraining order against Henyard and Woods. [62] ¶ 55. Both Brown and Redmond also went to the emergency room to treat various injuries. [62] ¶¶ 56–57.

On several occasions before the meeting, Brown went to defendants South Holland Police Department and Thornton Township asking for police presence at the meeting because he did not feel safe. [62] ¶ 117. He was told that they did not have the resources to provide a presence and that Henyard had her own security apparatus

---

[2] One such video is attached to defendant Henyard, Woods, and Moore's motion to dismiss. [67]. However, plaintiffs' consolidated amended complaint neither attaches nor makes specific reference to this particular video. I therefore disregard it for the purposes of the present motions to dismiss. *See, e.g., Brown v. City of Chicago*, 594 F.Supp.3d 1021, 1030 (N.D. Ill. 2022) (noting that while the videos may "provide key insights into the allegedly unreasonable events that took place … the videos are not themselves dispositive of the facts at issue").

and did not request additional security. [62] ¶ 117. According to plaintiffs, a South Holland police officer or security guard was at the meeting and had the ability to stop the altercation before it escalated. [62] ¶ 118.

Each plaintiff brings a separate § 1983 First Amendment retaliation claim against all defendants. Plaintiffs allege three additional violations arising under § 1983: a due process violation against South Holland Police Department and Thornton Township; excessive force against McKinney; and conspiracy against Henyard and Woods. Plaintiffs also bring the following state-law claims: assault (against Woods and Criggley); battery (against Henyard, Woods, Criggley, McKinney, and Doe); negligence (against Allpoints, South Holland Police Department, and Thornton Township); false imprisonment (against McKinney); intentional infliction of emotional distress (against all defendants); negligent hiring, training, and supervision (against Allpoints); and conversion (against Criggley and Moore). [62] ¶¶ 59–158.

Six defendants move to dismiss certain claims brought against them. Defendant South Holland Police Department moves to dismiss all claims. [65]. Defendants Allpoints and McKinney move to dismiss the federal claims and remand any remaining state-law claims. [63].[3] Defendants Henyard, Woods, and Moore also move to dismiss some claims. [67].

---

[3] Defendants Allpoints and McKinney also move to strike certain of plaintiffs' prayers for relief. [64] at 9–12. This request is denied. Federal Rule of Civil Procedure 54(c) states that a "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." It necessarily follows that a party cannot be granted any form of relief to which it is not ultimately entitled. Plaintiffs' prayers for relief

4

### III.    Analysis

### A.    Claims Against South Holland Police Department

Federal Rule of Civil Procedure 17(b) requires a defendant to have the legal capacity to be sued. In Illinois, "[a] party to litigation must have a legal existence … to sue or be sued." *Jackson v. Vill. of Rosemont*, 180 Ill.App.3d 932, 937 (1988). Municipal police departments are not legal entities separate from the municipality. *West By and Through Norris v. Waymire*, 114 F.3d 646, 646–47 (7th Cir. 1997). Thus, the Village of South Holland—not the South Holland Police Department—should have been named in this lawsuit.

However, as discussed below, the complaint fails to state a viable claim against either the village or its police department. In responding to the motion to dismiss, plaintiffs "agree to dismiss all claims against SHPD except their Section 1983 Due Process State-Created Danger Claim (Count III)." [72] at 1. I limit my inquiry to whether the due process claim is sufficiently pled against South Holland. The due process claim is premised on the idea that South Holland Police Department had a duty to maintain order and prevent foreseeable harm at the town meeting, and that the department breached this duty by failing to intervene and prevent the altercation. [62] ¶¶ 83–89.

The Due Process Clause is about limiting the state's power to act; it does not impose an affirmative obligation on states to protect citizens from private violence.

---

have no effect on the scope or the burdens of the litigation on defendants; striking them is unnecessary.

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). There are two exceptions to the *DeShaney* principle: (1) when the state has a "special relationship" with the person in need of protection, and (2) "when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced." *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 916 (7th Cir. 2015). Plaintiffs argue that this second exception applies. [72] at 1.

"The state-created danger exception is a narrow one." *Doe*, 782 F.3d at 917. It applies only where (1) the state, through affirmative acts, creates or increases a danger faced by an individual; (2) the state's failure to protect an individual from such danger proximately causes the individual's injury; and (3) the state's failure to protect the individual "shocks the conscience." *Weiland v. Loomis*, 938 F.3d 917, 920 (7th Cir. 2019). As plaintiffs acknowledge, they must allege that the state did more than just stand by and do nothing. [72] at 4 (citing *Sandage v. Bd. of Comm'rs of Vanderburgh Cnty.*, 548 F.3d 595 (7th Cir. 2008)). But plaintiffs nevertheless argue that South Holland Police Department's refusal to provide police presence at the meeting, based in part on the fact that Henyard would have "her own security apparatus," provided Brown with the kind of false assurance capable of constituting an affirmative act. [72] at 5–6.

But the instant case is distinguishable from plaintiffs' primary authority, *Rakes v. Roederer*, 117 F.4th 968 (7th Cir. 2024). In *Rakes*, a case involving domestic violence, state officials made numerous statements to the victim assuring her that her husband would be on a 24-hour mental-health hold at the hospital. 117 F.4th at

6

971. Relying on these assurances, she returned home alone, only to be shot and killed by her husband a few hours later when he was discharged from the hospital. *Id.* at 972. Unlike in *Rakes*, plaintiffs here have not alleged that any of the department's assurances were actually false. The statements that "Henyard did not ask for additional security," "Henyard has her own security apparatus," and the Department "did not have the resources" are not assurances at all, but rather statements explaining to Brown why there would *not* be additional security at the town meeting.

Even more fatal to plaintiffs' due process claim is the requirement that any failure by South Holland shock the conscience. "Making a bad decision, or even acting negligently, does not suffice to establish the type of conscience-shocking behavior that results in a constitutional violation." *Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 654–55 (7th Cir. 2011). In support of their argument, plaintiffs cite *Lampley v. City of Harvey*, 2023 WL 121747 (N.D. Ill. Jan. 6, 2023). In *Lampley*, instead of conducting a normal line-up at the police station, officers brought the offenders directly to the victim's home in order for him to identify them. 2023 WL 121747, at *1. When the offenders were released from custody, they returned to the victim's home where they shot and killed the victim. *Id.*

Unlike the defendants in *Lampley*, the South Holland Police Department did not engage in "a gross departure from generally accepted policing practices" when they declined to provide additional police presence at a public meeting that they knew would already have some form of security. *See id.* at *7. Even taking as true the facts alleged in the consolidated complaint, plaintiffs have failed to plead a plausible due

7

process violation under § 1983. Count III is dismissed with respect to defendant South Holland Police Department.[4]

## B.     First Amendment Retaliation Claims

To prevail on a First Amendment retaliation claim, a plaintiff must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was a motivating factor the defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Plaintiffs allege that all defendants "physically intimidated, assaulted, and allowed violence against [them] in retaliation for political speech critical of a government official." [62] ¶¶ 69, 82. Brown's claim is premised on his constitutional right to engage in political speech. [62] ¶ 61. Redmond's claim is based on his constitutional right of freedom of association with Brown. [62] ¶ 70.

### 1.     Henyard, Woods, and Moore

In their motion, defendants Henyard, Woods, and Moore argue that plaintiffs' First Amendment retaliation claims should be dismissed for two independent

---

[4] The dismissal is without prejudice to repleading against a proper defendant. "Ordinarily … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend [their] complaint before the entire action is dismissed." *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015). I note, however, that in addition to failing to adequately plead the state-created danger exception, plaintiffs also face a *Monell* problem in any claims brought against government entities. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978) (noting that an entity may by liable under § 1983 only when its own policies or customs caused the constitutional injury alleged by the plaintiffs). The present complaint fails to allege municipal fault and even if plaintiffs seek leave to amend, it is unclear whether they will be capable of doing so. This same logic applies to claims against defendant Thornton Township, who did not move to dismiss.

reasons. [67-1] at 5–10. First, defendants argue that Brown's comments did not qualify as constitutionally protected speech and thus he did not engage in an activity protected by the First Amendment. Second, defendants argue that they were not acting "under color of state law" during the January 2025 melee.

The right of free speech is not absolute. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571 (1942). Certain narrow classes of speech—such as fighting words—are not protected by the First Amendment. *Id.* at 571–72. The definition of fighting words has been winnowed down to apply only to those words that tend "to provoke a violent reaction and hence a breach of the peace." *Purtell v. Mason*, 527 F.3d 615, 624 (7th Cir. 2008). Words that merely have the "capacity to inflict emotional injury" no longer fall outside the realm of protected speech. *See id.*

Defendants argue that Brown's speech amounted to fighting words. [67-1] at 6. As mentioned above, I disregard the video attached to their motion. Taking plaintiffs' allegations as true, as I must do at the motion to dismiss phase, Brown's "speech was political in nature." [62] ¶ 60. Brown was engaging in core political speech when he publicly criticized a public official at the town meeting. *See, e.g.*, *Virginia v. Black*, 538 U.S. 343, 365 (2003) (noting that political speech is "at the core of what the First Amendment is designed to protect").[5] Defendants' first argument challenging the First Amendment retaliation claims is unpersuasive.

---

[5] Even if I ultimately agreed with defendants that certain parts of the speech were unprotected, the circumstances surrounding Brown's speech (during the public comment portion of a town meeting involving government actors) support his argument that at least some of his speech is entitled to constitutional protection. [73] at 2–9.

9

Defendants go on to argue that the § 1983 claims must be dismissed because the named defendants were not acting "under color of state law" during the challenged conduct. [67-1] at 7–8. In support of their argument, defendants cite *Zienciuk v. City of Chicago*, 2002 WL 1998309 (N.D. Ill. Aug. 28, 2002), a case involving off-duty police officers getting into a bar fight.

A government official's conduct occurs under color of state law when it relates in some way to the performance of her official duties. *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010). This includes "a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of the state." *Id.*

Plaintiffs allege that Henyard was present at the town meeting in her official capacity as Thornton Township Supervisor. [62] ¶ 60. However, what matters is the specific acts the government official performed, not just that she was on duty. *Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995). Battery is not related to a town supervisor's duties. That said, battery *as a means of silencing dissent* was plausibly related to Henyard's duties. Far from a spontaneous private altercation, plaintiffs have plausibly alleged that Henyard's actions were in response to the criticism voiced by Brown at a public meeting over which she was presiding. *See, e.g.*, [62] ¶ 60. Viewing plaintiffs' allegations in a light most favorable to them, I find that they may be able to prove that Henyard was acting under color of state law.

In contrast, plaintiffs do not adequately allege that defendants Woods and Moore were acting under color of state law during the town meeting or when the

10

melee ensued. While plaintiffs allege that one topic under discussion at the town meeting was the status of Woods's employment, [62] ¶ 142, plaintiffs have not alleged that Woods or Moore exercised power "possessed by virtue of state law and made possible only because [they were] clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988). Here, the *Zienciuk* example is more applicable: Woods and Moore happened to be public employees aligned with Henyard, but their participation in the brawl at an open meeting was not made possible by any public authority they had. Plaintiffs have not adequately alleged that defendants Woods or Moore were acting under color of law when the melee ensued. Counts I and II are therefore dismissed against these two defendants.

### 2.     *Allpoints and McKinney*

Unlike defendants Henyard, Woods, and Moore, defendants Allpoints and McKinney (and John Doe) are not public employees. [62] ¶¶ 12–13. Defendants do not dispute that § 1983 claims may be invoked against private individuals who exercise government power. Allpoints and McKinney instead argue that neither is alleged to have taken action under color of state law and, therefore, cannot be held liable for a constitutional violation under § 1983. [64] at 5–9.

A private party will be deemed to have acted under "color of state law" when the state either (1) "effectively directs or controls the actions of the private party such that the state can be held responsible for the private party's decision"; or (2) "delegates a public function to a private entity." *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 628 (7th Cir. 1999). Plaintiffs allege that Allpoints

11

and McKinney were contracted by Thornton Township (or Henyard, as its representative) to provide security at public Township meetings. [62] ¶¶ 12–13. According to the complaint, defendants "were responsible for maintaining order and security at the public meeting." [62] ¶ 115.

"[T]he question whether particular conduct is 'private,' on the one hand, or 'state action,' on the other, frequently admits no easy answer." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349–50 (1974). This "largely fact-specific inquiry" requires courts to ascertain the amount of state involvement in a given case. *Air Line Pilots Ass'n, Int'l v. Dep't of Aviation of City of Chicago*, 45 F.3d 1144, 1149 (7th Cir. 1995).

At this early stage in the litigation, defendants cannot establish as a matter of law that the state did not delegate a public function to Allpoints. Defendants primarily rely on *Wade v. Byles*, 83 F.3d 902 (7th Cir. 1996), which found that a private security company hired by a governmental entity did not engage in state action when its security guard shot the plaintiff as he passed through a security checkpoint. [64] at 7–8. In reaching its conclusion, the court pointed to various duties of the security guard in question. *Wade*, 83 F.3d at 906.

But *Wade* was decided on summary judgment. As was *Johnson v. LaRabida Children's Hosp.*, 372 F.3d 894 (7th Cir. 2004), which similarly affirmed the grant of summary judgment in a case where the plaintiff sought to impose § 1983 liability on a private entity. The absence of a developed record in this case makes dismissal of the § 1983 claims against Allpoints and McKinney inappropriate at this time. *See, e.g., Payton*, 184 F.3d at 628 (noting that it is possible for private security guards to

12

be deemed state actors and affirmatively citing various cases that upheld such claims for 12(b)(6) purposes).

Plaintiffs have adequately pled § 1983 liability against defendants Allpoints and McKinney. Defendants' motion to dismiss Counts I and VIII is denied.[6] Their request that I decline to exercise supplemental jurisdiction is therefore denied as moot. [64] at 12–13.

### 3.    *Section 1983 Conspiracy*

To establish § 1983 liability through conspiracy, a plaintiff must demonstrate that (1) a state official and private official reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individuals were "willful participants in joint activity with the state or its agents." *Williams v. Seniff*, 342 F.3d 774 (7th Cir. 2003). Further, to succeed on such a claim, "an actual deprivation of the plaintiff's constitutional rights" must occur. *Gibson v. City of Chicago*, 910 F.2d 1510, 1516 (7th Cir. 1990).

Defendants Henyard and Woods move to dismiss plaintiffs' conspiracy claim on the grounds that Brown did not engage in protected speech and defendants were not acting color of state law. As discussed above, plaintiffs have adequately pled that Brown's public comments were protected by the First Amendment. Further, the very

---

[6] The parties do not brief the question of *Monell* liability against Allpoints. I note, however, that *Monell*'s limitation on municipal liability extends to private entities. *See Hahn v. Walsh*, 762 F.3d 617, 638–39 (7th Cir. 2014); *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) ("Moreover, just as a municipal corporation is not vicariously liable upon a theory of respondeat superior for the constitutional torts of its employees, a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." (citations omitted)).

fact that Woods was *not* acting under color of state law during the town meeting helps establish the plausibility of a civil conspiracy because such a charge requires a state official (Henyard) and a private official (Woods) to reach an agreement.

Defendants' motion to dismiss Count X of the consolidated amended complaint is denied.

### C.       State-Law Claims

#### 1.       *Assault and Battery*

Defendant Woods moves to dismiss the assault and battery claims against him on the grounds that he was acting in self-defense. [67-1] at 10. But the viability of this affirmative defense is a question of fact inappropriate for resolution at this stage of the litigation. *See, e.g.*, *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (noting that, because affirmative defenses frequently turn on facts not before the court at the pleading stage, "dismissal is appropriate *only* when the factual allegations in the complaint unambiguously establish all the elements of the defense" (emphasis in original)). The consolidated complaint adequately alleges that Woods initiated the confrontation by approaching plaintiffs in a threatening manner after Brown's public comments and ultimately making harmful contact with plaintiffs. [62] ¶¶ 96–105. Taking these well-pled allegations as true, Woods's motion to dismiss Counts IV and V is denied.

#### 2.       *Intentional Infliction of Emotional Distress*

Finally, defendants Henyard, Woods, and Moore move to dismiss plaintiffs' state-law claim for intentional infliction of emotional distress, which has been alleged

14

against all defendants. Under Illinois law, a plaintiff bringing a claim for intentional infliction of emotional distress must plead that (1) the defendant's conduct was extreme and outrageous; (2) the defendant knew there was a high probability that his conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress. *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 63 (Ill. 2016). It is clear that the tort "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* (citation omitted). Plaintiffs' claim is thus limited to the conduct that occurred in the aftermath of his comments.

Pleading extreme and outrageous conduct is a "high bar"—the conduct must "be so extreme in degree and outrageous in character as to go beyond all possible bounds of decency." *Einsle v. All. Clinical Assocs., S.C.*, 2018 WL 6735404, at *3 (Ill. App. Ct. Dec. 20, 2018). Plaintiffs may establish "extreme and outrageous" conduct by alleging a "pattern, course and accumulation" of tortious acts. *Boutros v. Park Plaza Nw. Home for the Aged*, 2016 WL 6995568, at *5 (N.D. Ill. Nov. 30, 2016). But the fact that plaintiffs allege that they were the victims of assault and battery on one occasion does not necessarily mean that they have a cause of action for intentional infliction of emotional distress. *See Miller v. Equitable Life Assurance Soc'y of the U.S.*, 181 Ill.App.3d 954, 957 (1989).

The facts as alleged in the complaint are insufficient to rise to the level of extreme and outrageous conduct. Battery already exists as a standalone tort. Holding that identical conduct is sufficient to allege the additional tort of intentional infliction of emotional distress—where plaintiffs have not alleged any special circumstances,

15

such as repeated or cumulative behavior—would be duplicative and undercut the "extreme and outrageous" requirement of the tort. Defendants' motion to dismiss Count IX is granted.

## IV.    Conclusion

Defendant South Holland Police Department's motion to dismiss, [65], is granted, and the clerk shall terminate South Holland Police Department as a party in this action. Defendants Allpoints and McKinney's motion to dismiss, [63], is denied. Defendants Henyard, Woods, and Moore's motion to dismiss, [67], is granted in part, denied in part.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: March 23, 2026

16